IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ERIC RAYMOND,

                    OPINION AND ORDER

            Plaintiff,

                    17-cv-109-bbc

      v.

CoVANTAGE CREDIT UNION,
BONAFIDE RECOVERY, LLC,
MICHAEL MATIJEVIC and STRASSER & YDE, S.C.,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This case arises out of a defaulted car loan. Plaintiff and debtor Eric Raymond contends that defendants CoVantage Credit Union, Bonafide Recovery, LLC, Michael Matijevic and Strasser & Yde, S.C. violated his rights under both the Fair Debt Collection Practices Act and the Wisconsin Consumer Act in various ways while attempting to collect payment from him. Now before the court are three motions to dismiss filed by all of the defendants in three different groups: (1) CoVantage, dkt. #10; (2) Bonafide Recovery and Matijevic, dkt. #7; and (3) Strassder, dkt. #11.

Each set of defendants asserts multiple grounds for dismissing various claims, but in this opinion I am focusing on the question whether plaintiff's claims under the Fair Debt Collection Practices Act are untimely. If they are, the parties agree that the court should relinquish supplemental jurisdiction over the remaining state law claims.

I conclude that it is clear from the face of the complaint that plaintiff's federal claims are untimely with the exception of claims arising from the alleged repossession of his car. As to those claims, I am converting the motions to dismiss into motions for summary judgment and giving plaintiff an opportunity to submit supplemental evidence and argument on the question whether those claims are timely under the discovery rule. I am dismissing all other federal claims.

Plaintiff fairly alleges the following facts in his complaint.

ALLEGATIONS OF FACT

On or about August 16, 2013, plaintiff Eric Raymond purchased a 2013 Kia Soul from Kocourcek Motor Company, Inc. Plaintiff obtained a loan to purchase the car and the loan was assigned to defendant CoVantage Credit Union. As collateral, plaintiff pledged a 1992 Kingfisher Master, a 1992 Suzuki and a 1992 All Trailer Manu.

At an unspecified time, plaintiff defaulted on the loan. On or about November 25, 2014, defendant CoVantage sent plaintiff a "Notice of Right to Cure Default/Take Possession" with respect to the 2013 Kia Soul. The notice stated that plaintiff could cure the default by paying (1) $2257 on or before December 10, 2014; (2) $2257 (the same amount) on or before November 29, 2014; or (3) $2641.50 on or before November 30, 2014.

The same day, defendant CoVantage sent plaintiff a "Notice of Right to Cure Default/Take Possession" with respect to the 1992 Kingfisher and 1992 Suzuki, as well as

a 2000 Chevrolet Venture and a 1992 manufactured home. (Plaintiff does not explain whether or how the Chevrolet and home are related to the defaulted loan.) The notice stated that plaintiff could cure the default by paying (1) $1582.88 on or before December 10, 2014; (2) $1582.88 (the same amount) on or before December 4, 2014; or (3) $1850.32 on or before December 5, 2014. With respect to one or more of the vehicles in the notice, defendant CoVantage does not hold a valid security interest. (Plaintiff does not identify which vehicles or vehicles were listed improperly.)

On or about January 26, 2015, plaintiff notified defendant CoVantage in a letter that he was represented by counsel.

On or about February 11, 2015, defendant CoVantage filed a replevin action against plaintiff in state court, seeking possession of the Kia, Chevrolet, Kingfisher, Suzuki and Manu. On June 18, 2015, a commissioner ordered replevin of the Kia but withheld a judgment until the deadline for appeal expired.

On June 22, 2015, defendant CoVantage retained defendant Bonafide Recovery, LLC "to attempt repossession" of the Kia. Cpt. ¶ 45, dkt. #1. Defendant Bonafide Recovery then retained defendant Michael Matijevic as well as Michael Wiesman as "local repossessing agents." Id. at ¶ 46. (Plaintiff named Wiesman as a defendant in the complaint but has since dismissed all claims against him. Dkt. #17.) That night, Matijevic and Wiesman repossessed the Kia. On June 23, 2015, defendant CoVantage returned the Kia to plaintiff because it had been repossessed without a court order. On June 25, 2015, defendant CoVantage filed a request for "a de novo hearing" of the commissioner's decision.

The commissioner did not enter judgment.

On or about August 30, 2015, defendant CoVantage again retained defendant Bonafide Recovery to repossess the Kia and Bonafide retained defendants Matijevic and Wiesman. That night, Matijevic and Wiesman repossessed the Kia.

On or about September 4, 2015, plaintiff sued defendant CoVantage in state court for violations of the Wisconsin Consumer Act. On or about December 11, 2015, CoVantage filed a counterclaim against plaintiff though their counsel, Strasser & Yde, S.C., alleging that plaintiff had committed theft and obtained the loan through intentional misrepresentations. Defendant Strasser signed the counterclaim. The allegations in the counterclaim are untrue and were brought for the purpose of harassment.

Plaintiff did not become aware of defendant Bonafide Recovery's "agency relationship" with defendant CoVantage until he received "discovery responses" in July 2016. Id. at ¶ 50. He did not become aware of defendant Matijevic's involvement in the repossession until December 2016.

OPINION

In his complaint, plaintiff alleges that defendants violated the Fair Debt Collection Practices Act in seven ways. Cpt. ¶ 76, dkt. #1. Those seven allegations relate to three types of conduct: (1) sending confusing default notices; (2) repossessing plaintiff's car; and (3) filing a vexatious counterclaim against plaintiff in state court. Plaintiff does not connect particular actions with violations of particular provisions of the Act, but plaintiff's legal

theories under the Act are not important for the purpose of this opinion.

Each defendant contends that plaintiff's claims under the Fair Debt Collection Practices Act are barred by the Act's statute of limitations, which is "one year from the date on which the violation occurs." 15 U.S.C. § 1692k. Although a statute of limitations is an affirmative defense, a district court may consider the defense in the context of a motion to dismiss if it is clear from the face of the complaint that the defense applies. Hyson USA, Inc. v. Hyson 2U, Ltd., 821 F.3d 935, 939 (7th Cir. 2016).

It is clear from the face of the complaint that all of the allegedly unlawful conduct occurred more than one year before plaintiff filed this lawsuit in February 2017. Defendant CoVantage sent the allegedly confusing default notices in November 2014; defendant Matijevic, acting as an agent of defendant CoVantage and defendant Bonafide Recovery, allegedly repossessed plaintiff's car unlawfully in June 2015 and again in August 2015; and defendant CoVantage filed the allegedly vexatious counterclaim against plaintiff though its counsel, defendant Strasser in December 2015.

Plaintiff relies on two doctrines to support his argument that the statute of limitations does not bar his claims: the continuing violation doctrine and the discovery rule. I will consider each in turn.

## A. Continuing Violation Doctrine

The continuing violation doctrine has been described in different ways. For example, in the context of harassment, the Supreme Court has held that incidents of harassment that

occurred outside the limitations period can be considered timely if they were part of a series of related incidents that continued into the statutory time period. <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 105 (2002). This rule is based on the view that the claim "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" <u>Id.</u> at 117 (citing 42 U.S.C. § 2000e–5(e)(1)). In other words, because the "unlawful employment practice" is not complete until the last act of harassment concludes, older incidents may be considered timely because they are part the same "practice" as the newer incidents.

In <u>Limestone Development Corp. v. Village of Lemont, Illinois</u>, 520 F.3d 797, 800–01 (7th Cir. 2008), the court took a somewhat different view in the context of a RICO claim, stating that "[t]he office of the [continuing violation] doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. It is thus a doctrine not about continuing, but about a cumulative, violation." The court expressed yet another view in <u>Savory v. Lyons</u>, 469 F.3d 667, 672–673 (7th Cir. 2006), when it stated that it "has applied the continuing violation doctrine when the plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events." These differing applications of a doctrine with the same name seem to reflect Justice O'Connor's observation that the continuing violation doctrine may apply in different ways in difference contexts. <u>Morgan</u>, 536 U.S. at 127–28 (O'Connor, J., concurring in part and dissenting in part).

Under the view in <u>Morgan</u>, a continuing violation is seen as a series of incidents that

may or may not be independently actionable but are so closely related that they are viewed as one act for the purpose of the statute of limitations.  Under the view in <u>Limestone</u>, accrual of a claim is delay because the individual incidents cannot be brought as separate claims but only qualify collectively as an injury that gives rise to a cause of action.  Under the view in <u>Savory</u>, a delay in accrual is necessary because the plaintiff's injury was hidden at first.

Plaintiff does not develop an argument under these or any other version of the continuing violation doctrine.  Instead, he says that all of his claims are "premised upon" the two notices that defendant CoVantage sent him in November 2014 and that "any collection activity taken" after those notices was "invalid" and part of a continuing violation.  Dkt. #18 at 7.  Plaintiff does not explain his theory clearly, but he seems to be arguing that his statute of limitations cannot expire on any of his claims until CoVantage gives him a default notice that complies with the Wisconsin Consumer Act.

One obvious problem with plaintiff's argument is that he is relying on a state law, but state law is irrelevant to determining whether a federal claim is timely.  In any event, plaintiff does not cite any authority for his view of the continuing violation doctrine and it is not supported by any of the cases cited above.  Plaintiff is not plausibly alleging that defendants engaged in a course of conduct that can be described as a single act, that any of the alleged acts are cumulative or that any of the alleged violations were hidden from view.

It is not clear from plaintiff's brief exactly why he believes the continuing violation doctrine should apply, but my understanding is that he believes that defendant CoVantage's

initial act of allegedly failing to provide proper notice has continued harming him even to the present because the defects in the notice have never been corrected. However, the Court of Appeals for the Seventh Circuit has rejected that view of the continuing violation doctrine in multiple cases. Savory, 469 F.3d at 672–73 (continuing violation doctrine does not apply to "a discrete act" that has "lingering consequences"). See also Rosado v. Gonzalez, 832 F.3d 714, 718 (7th Cir. 2016) ("[A] plaintiff cannot use a theory of a continuing civil conspiracy to recover for individual overt acts that would themselves be time-barred."); Limestone, 520 F.3d at 801 ("The statute of limitations begins to run upon injury (or, as is standardly the case with federal claims, upon discovery of the injury) and is not tolled by subsequent injuries.").

In Bogenschneider v. Kimberly Clark Global Sales, LLC, No. 14–cv–743–bbc, 2015 WL 796672, at *8 (W.D. Wis. Feb. 25, 2015), I considered and rejected a similar argument that the continuing violation doctrine should apply to a claim that the defendant had retaliated against the plaintiff by filing a counterclaim against him in state court. Although the counterclaim had been filed outside the limitations period, the plaintiff's theory was that the counterclaim continued to harm him so long as it was pending. That was not sufficient because the plaintiff had identified only one discrete act that harmed him, which was the filing of the counterclaim. The same is true in this case. Plaintiff does not identify any injuries that he sustained during the limitations period; he alleges only lingering consequences of actions that allegedly harmed him earlier.

In the context of the Fair Debt Collection Practices Act in particular, I concluded

recently that the continuing violation doctrine did not apply to a series of allegedly harassing phone calls. Bjerke v. Messerli & Kramer, P.A., No. 16-cv-748-bbc, 2017 WL 2869957, at *3 (W.D. Wis. July 5, 2017). I relied on Kovacs v. United States, 614 F.3d 666, 676 (7th Cir. 2010), in which the court stated that the continuing violation doctrine does not apply to "a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." I also cited Gajewski v. Ocwen Loan Servicing, 650 F. Appx. 283, 286087 (7th Cir. 2016), a nonprecedential opinion in which the court stated that each independent violation of the Act must be considered separately for the purpose of the statute of limitations.

In this case, each of the alleged violations has an even weaker relationship than those at issue in Bjerke and Gajewski. The allegedly confusing letters, the repossession of plaintiff's car and the state counterclaims are discrete acts that are connected only by plaintiff's defaulted loan. By plaintiff's own assertion, these are independent violations of the law. Even if they *were* related, it would make no difference because, as noted above, all of them occurred outside the limitations period. There is simply no basis for applying the continuing violation doctrine in this case.

## B. Discovery Rule

The discovery rule "allow[s] a claim to accrue when the litigant first knows or with due diligence should know facts that will form the basis for an action." Merck & Co. v. Reynolds, 559 U.S. 633, 646 (2010). Like the continuing violation doctrine, the rule has

been applied differently in different contexts.  As noted in <u>Sidney Hillman Health Center of Rochester v. Abbott Laboratories, Inc.</u>, 782 F.3d 922, 930 (7th Cir. 2015), in some cases, the discovery rule has been described as delaying accrual until the "plaintiff discovers that he has been injured and who caused the injury," but in other cases accrual occurs once the plaintiff discovers his injury and knowledge of the cause is not required.  As noted by the Court in <u>Merck</u>, reasonable diligence is always required.

Plaintiff does not deny that he knew about his alleged injuries when they occurred or shortly thereafter, but he says that the discovery rule should apply because he did not learn that defendants Bonafide Recovery and Matijevic were involved in repossessing his car until July 2016 and December 2016, respectively.  Although plaintiff does not say so expressly, this argument applies only to plaintiff's claims related to repossession.  Plaintiff does not deny that he knew at the time of the alleged violations that defendant CoVantage was responsible for the allegedly confusing default notices  and that defendants CoVantage and Strasser were responsible for filing the state court counterclaim against him.   Accordingly, I will grant defendants' motions to dismiss those claims.

Presumably, plaintiff knew that defendant CoVantage was involved in both repossessions.  However, that conclusion does not necessarily lead to dismissal of the claim against CoVantage because plaintiff argues that CoVantage can be held vicariously liable for Bonafide Recovery's and Matijevic's actions.  Although that seems to be a dubious ground for avoiding a statute of limitations defense by CoVantage, I will defer a decision on that issue for now.

Plaintiff's reliance on the discovery rule raises three questions: (1) whether the discovery rule applies to claims under the Fair Debt Collection Practices Act; (2) if so, which version of the discovery rule applies; and (3) whether plaintiff was required to allege facts in his complaint showing that he exercised reasonable diligence. (Defendants Bonafide Recovery and Matijevic raise another question that I will discuss below.) The parties ignore the second question, so I will do the same, that is, I will assume for the purpose of the motions to dismiss that, if the discovery rule applies in this case, it delays accrual of plaintiff's claim until he learned or could have learned with reasonable diligence both that he was injured and the identity of person or entity that allegedly injured him.

1. Whether the discovery rule applies to claims under the Fair Debt Collection Practices Act

The discovery rule "is read into statutes of limitations in federal-question cases in the absence of a contrary directive from Congress." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1990) (internal quotations omitted). As the parties acknowledge, the Court of Appeals for the Seventh Circuit has not considered whether the discovery rule should apply in the context of the Fair Debt Collection Practices Act and courts that have considered the issue are split.

Plaintiff cites a number of district courts in this circuit, many of which have held that the discovery rule should apply to claims under the Act. E.g., Skinner v. Midland Funding, LLC, No. 16 C 4522, 2017 WL 1134490, at *2 (N.D. Ill. Mar. 27, 2017); Sneed v. Winston Honore Holdings, LLC, No. 16 C 2564, 2017 WL 467686, at *3 (N.D. Ill. Feb.

3, 2017) <u>McDermott v. Barton</u>, No. 14-CV-704-NJR-PMF, 2014 WL 6704544, at *4 (S.D. Ill. Nov. 26, 2014). However, these district court decisions are not instructive because they include little reasoning to support their conclusion.

Plaintiff also argues that the discovery rule should apply for policy reasons, but this assumes that a court is entitled to determine on its own whether it makes sense to apply the rule in a particular case. As stated in <u>Cada</u>, the proper inquiry is whether Congress has expressed its intent in the statute to preempt or modify the rule, a question that plaintiff simply ignores in his brief.

The relevant statutory provision is 15 U.S.C. § 1692k(d), which states that a plaintiff may bring a claim under the Act "within one year from the date on which the violation occurs." Because the limitations period begins to run on the date that the violation "occurs" rather than on the date that the violation is discovered, courts in cases such as <u>Butler v. J.r.S-I, Inc.</u>, No. 15 C 6059, 2016 WL 1298780, at *4 (N.D. Ill. Apr. 4, 2016), and <u>Rotkiske v. Klemm</u>, No. CV 15-3638, 2016 WL 1021140, at *3 (E.D. Pa. Mar. 15, 2016), have interpreted this language as supporting a conclusion that Congress has rejected a discovery rule for the Act. Other courts have concluded that the Act is "silent" on the discovery rule, e.g.,<u>Greenfield v. Kluever & Platt, LLC</u>, No. 09 C 3576, 2010 WL 604830, at *2 (N.D. Ill. Feb. 16, 2010), but often do so without considering the language in § 1692k(d) or addressing the argument raised in <u>Butler</u> and <u>Rotkiske</u>. Presumably, the view of these courts is that Congress must express its intent to preempt the discovery rule more clearly. E.g., <u>Johnson-Morris v. Santander Consumer USA, Inc.</u>, 194 F. Supp. 3d 757, 763 (N.D. Ill.

2016) (distinguishing § 1692k(d) from statute of limitations in Fair Credit Reporting Act, which expressly identifies instances in which accrual is delayed by discovery).

Neither the parties nor the cases they cite identify a standard for determining how clear congressional intent must be and they do not provide any other examples in this circuit or any other in which a court considered whether Congress preempted the discovery rule in a particular statute. In light of this lack of development on an unsettled issue, I am reluctant to take sides when there appears to be a simpler way of deciding whether plaintiff's claims related to the repossession are timely, which I will discuss next.

## 2. Reasonable diligence

Defendant CoVantage raises a potentially strong argument for finding plaintiff's claims time barred irrespective of the discovery rule. In particular, CoVantage argues that plaintiff did not use reasonable diligence in discovering the persons or entities involved in repossessing his car. For example, CoVantage says that plaintiff or his counsel could have learned that information simply by contacting law enforcement. Wis. Stat. § 425.2065(2) (before repossession occurs, "merchant" or "person" who repossesses car must notify local law enforcement about fact of repossession and "the names of the customer, merchant, and, if applicable, the person who repossesses the collateral or goods on behalf of the merchant").

Plaintiff does not deny that application of the discovery rule is contingent on his using reasonable diligence to discover the identity of any potential defendants. Nevertheless, plaintiff ignores defendant CoVantage's citation to Wis. Stat. § 425.2065 and he fails to

identify any reason he was unable to learn the identities of defendant Bonafide Recovery and defendant Matijevic sooner. Although he says that he acted reasonably by conducting discovery in the state court action, Plt.'s Br., dkt. #18, at 6, that response does not explain why he waited to investigate this issue until after he filed a lawsuit. Obviously, plaintiff knew that his car had been repossessed. At that point, he had a duty to make a reasonable effort to identify the person or persons responsible. <u>Fries v. Chicago & Northwest Transporation Co.</u>, 909 F.2d 1092, 1095 (7th Cir. 1990) (discovery "rule imposes on injured plaintiffs an affirmative duty to investigate the potential cause of his injury").

Alternatively, plaintiff says that the question of reasonable diligence is "outside the scope of the pleadings and should not be considered on a motion to dismiss." Plt.'s Br., dkt. #18, at 6. This argument seems to rely on the general rule, noted above, that a failure to comply with a statute of limitations is an affirmative defense, so a court should not dismiss a complaint as untimely unless the complaint alleges facts showing that it is untimely. <u>Sidney Hillman Health Center</u>, 782 F.3d at 927–28. However, as also noted above, plaintiff *has* alleged facts showing that he filed his lawsuit more than one year after all the relevant events occurred. Even assuming that the discovery rule applies to the Fair Debt Collection Practices Act, it would be *plaintiff's* burden to show that he acted with reasonable diligence. <u>Cathedral of Joy Baptist Church v. Village of Hazel Crest</u>, 22 F.3d 713, 717 (7th Cir. 1994) ("The discovery rule is an exception to the time-bar provision. Thus, the [plaintiff] has the burden of showing that it falls within the exception by demonstrating that even with the exercise of reasonable diligence it could not have known of the purported injury inflicted by

the [defendant.]").  This suggests that, if the complaint alleges facts showing that the relevant events occurred outside the limitations period, then the plaintiff's complaint is subject to dismissal unless he also alleges facts that support the application of the discovery rule.

Under this reasoning, plaintiff's failure to allege any facts showing reasonable diligence would require dismissal of his claims.  However, because I am not aware of any cases in which the court of appeals held that a plaintiff must affirmatively plead facts showing reasonable diligence, I conclude that the prudent approach is to convert defendants' motion to dismiss into a motion for summary judgment that is limited to the question of timeliness.  R.J. Corman Derailment Services, LLC v. International Union of Operating Engineers, Local Union 150, AFL-CIO, 335 F.3d 643, 647 (7th Cir. 2003) (when it is necessary to consider facts outside pleadings, court should convert motion to dismiss into motion for summary judgment).  I will give plaintiff the opportunity to present any evidence and argument he has supporting his argument that he exercised reasonable diligence in determining the persons responsible for repossessing his car.

### 3.  Evidence that contradicts complaint

This leads to an argument that defendants Bonafide Recovery and Matijevic raise in their reply brief, which is that the discovery rule cannot help plaintiff because he learned the identities of both defendants within two days of his car being repossessed.  Defendants support that allegation with an affidavit, dkt. #23, which I cannot consider in the context

of a motion to dismiss. <u>R.J. Corman</u>, 335 F.3d at 647. However, because I am converting the motions to dismiss into motions for summary judgment, plaintiff should respond to this argument as well.

C. <u>Next Steps</u>

After reviewing plaintiff's supplemental materials, I will consider whether any additional information from defendants is needed. If I determine that there are genuine issues of material fact that preclude summary judgment with respect to the statute of limitations, I will consider defendants' remaining arguments on the merits in their motions to dismiss.

The questions of what plaintiff knew, when he knew it and why he did not act sooner are all matters within plaintiff's own knowledge, so I see no reason why he should need discovery from defendants in order to answer these questions. However, if plaintiff believes that he needs additional time to conduct discovery, he may file a motion under Fed. R. Civ. P. 56(d) in which he identifies the discovery he needs, explains why he needs it and provides a proposed timeline for completing that discovery.

I note one last issue. Defendants observe repeatedly in their briefs that plaintiff's state court lawsuit is pending and includes many of the issues raised in this case. No defendant argues that the state court lawsuit has any preclusive effect on this case, presumably because judgment has not yet been entered. However, if it is true that the cases overlap substantially, it makes little sense for the parties to litigate both of them at the same

time.  Accordingly, in his supplemental materials, plaintiff should show cause why this case should not be stayed while the state case is pending, in the event that the federal lawsuit is not dismissed.  Grice Engineering, Inc. v. JG Innovations, Inc., 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) ("It is within the discretion of the court to stay proceedings pending the resolution of other suits. . . . The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.") (citing Landis v. North American Co., 299 U.S. 248, 254-55 (1936); Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997)).


ORDER

IT IS ORDERED that

1.  The motions to dismiss filed by defendants CoVantage Credit Union, dkt. #10, Bonafide Recovery, LLC and Michael Matijevic, dkt. #7, and Strasser & Yde, S.C., dkt. #11, are GRANTED as to plaintiff's claims under the Fair Debt Collection Practices Act, with the exception of plaintiff's claims against defendants CoVantage, Bonafide Recovery and Matijevic that repossession of plaintiff's car violated the Act.

2.  The motions to dismiss filed by defendant CoVantage, dkt. #10, and defendants Bonafide Recovery and Matijevic, dkt. #7, are CONVERTED into a motion for summary judgment on question whether plaintiff's claims related to the repossession are timely under the discovery rule.  Plaintiff may have until August 4, 2017, to file a supplemental brief and

any evidence he wishes to submit on that issue. Plaintiff need not submit proposed findings of fact with his supplemental materials.

3. In his supplemental brief, plaintiff should show cause why this case should not be stayed while the state case is pending, in the event that this case is not dismissed.

4. Once plaintiff submits his supplemental materials, I will determine whether it is necessary to obtain further input from defendants or address the other arguments in defendants' motions to dismiss.

5. If plaintiff does not respond by August 4, 2017, I will dismiss his remaining federal claims as untimely and relinquish supplemental jurisdiction over his state law claims.

Entered this 13th day of July, 2017.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge